No. 05-245

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 121

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

 CLAYTON MOONEY,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
                       In and For the County of Yellowstone, Cause No. DC-03-0635,
                       Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Richard J. Carstensen, Attorney at Law, Billings, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Ilka Becker,
        Assistant Attorney General; Helena, Montana

        Dennis Paxinos, County Attorney; Ingrid A. Rosenquist, Deputy
        County Attorney, Billings, Montana

                         Submitted on Briefs:  February 23, 2006

                                Decided:   May 31, 2006

Filed:

_____
                       Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    After protracted proceedings, the Thirteenth Judicial District Court, Yellowstone County, sentenced Clayton Mooney to a suspended six-month jail term (with the exception of seven days) for driving under the influence (DUI) in violation of § 61-8-401, MCA.  Mooney now appeals.

¶2    We restate the issues as follows:

¶3    1. Did the District Court violate Mooney's constitutional right to a speedy trial?

¶4    2. Did the State prove that Mooney drove the vehicle that crashed into Ruff's fence and that he drove it upon a public way?

**BACKGROUND**

¶5    On the evening of December 14, 2002, Darin Ruff answered the door to find Clayton Mooney standing before him.  Smelling of alcohol and looking not "all there," Mooney asked Ruff if he could leave his vehicle parked in Ruff's yard until the next morning because he was having car trouble.  Ruff acquiesced.  Some moments later, Mooney returned, at which point, Ruff, who was watching a movie with his wife and children, chose not to answer the door.  According to Ruff, Mooney yelled, "I'm sorry about the fence."  At his wife's prompting, Ruff called the sheriff's department.

¶6    Highway Patrol Officer Dell Patrick Aman reported to the Ruff residence on Grelck Lane, located north of old Highway 212.  Officer Aman testified that upon his arrival, he observed a 1986 Ford pickup truck that had run through a fence line and

2

sheared off a post. The post went through the driver's side headlight, causing damage to the front end of the vehicle, as well as thirty feet of fence line.

¶7 During Officer Aman's initial interview with Ruff, Mooney again showed up at Ruff's door. Officer Aman walked onto the porch to talk with Mooney, at which point he observed Mooney speaking with "very" slurred speech and smelling strongly of alcohol. Officer Aman then asked Mooney to remove his hat and submit to field sobriety tests, at which point, according to Officer Aman, Mooney challenged the officer's authority. Officer Aman arrested Mooney for DUI and transported him to the Yellowstone County Detention Facility, where Mooney refused to provide law enforcement information regarding the crash. At trial before the District Court judge, Officer Aman testified that he believed Mooney "stated at some point in time that he wasn't driving, a friend was driving." Mooney was alone each time he interacted with Ruff and law enforcement.

¶8 Mooney pled not guilty and was tried before the Justice of the Peace on July 25, 2003; the court convicted Mooney of DUI.[1] On July 30, 2003, Mooney appealed to the District Court. As a result of a nonjury trial held on November 24, 2003, Mooney was found guilty. One month later, Mooney moved for a new trial; the District Court denied the motion on March 22, 2004, and filed an amended judgment.[2] Eight months later, on December 21, 2004, Mooney filed a motion to dismiss on the grounds that his

---

[1]The Justice of the Peace also convicted Mooney of possession of drug paraphernalia. The District Court, however, overturned this conviction, and the State did not appeal.

[2]The amended judgment found Mooney guilty of DUI, but not possession of drug paraphernalia.

constitutional right to a speedy trial had been violated, in part because his sentence had not yet been imposed. The District Court denied Mooney's motion on February 1, 2005, and sentenced him the following month, on March 3, 2005. Mooney appealed a week later.

## STANDARD OF REVIEW

¶9 Whether a defendant has been denied a speedy trial is a question of constitutional law. We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *City of Billings v. Bruce*, 1998 MT 186, ¶ 18, 290 Mont. 148, ¶ 18, 965 P.2d 866, ¶ 18.

¶10 The standard of review regarding sufficiency of evidence to sustain a conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The credibility of witnesses and the weight to be given to their testimony are to be determined by the trier of fact, and disputed questions of fact and credibility will not be disturbed on appeal. *State v. McCarthy*, 2004 MT 312, ¶ 46, 324 Mont. 1, ¶ 46, 101 P.3d 288, ¶ 46. Circumstantial evidence can be sufficient to sustain a conviction. *State v. Enright*, 1998 MT 322, ¶ 35, 292 Mont. 204, ¶ 35, 974 P.2d 1118, ¶ 35.

## DISCUSSION

¶11 **1. Did the District Court violate Mooney's constitutional right to a speedy trial?**

¶12 Mooney filed a motion with the District Court to dismiss his case on the grounds that he did not receive a speedy trial as mandated by the Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution. Mooney argues that the District Court erred in denying his motion, specifically because the right to a speedy trial includes all periods of time from the date he filed his notice of appeal to the District Court on August 4, 2003, until the date the court sentenced him on March 3, 2005.

¶13 In *Bruce*, ¶ 19, we discussed the test set forth by the United States Supreme Court in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, for reviewing claims that a defendant has been unconstitutionally denied a speedy trial. "The *Barker* test requires that we consider: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right to a speedy trial by the defendant; and (4) the prejudice to the defense." *Bruce*, ¶ 19. We noted that these four factors "are necessarily general guidelines to be applied on a case-by-case basis to the unique circumstances of each case . . . [meaning that] courts must still engage in a difficult and sensitive balancing process." *Bruce*, ¶ 20 (citation omitted). We also concluded, with regard to the third factor, that "[s]o long as the defendant asserts his or her right to a speedy trial by a motion to dismiss on speedy trial grounds *filed prior to the time of trial* . . . the defendant has satisfied the third-prong of the *Barker* test and . . . further analysis of that prong is not only unnecessary, but inappropriate." *Bruce*, ¶ 48 (emphasis added).

5

¶14 The State succinctly argues that we should affirm the District Court's denial of Mooney's motion to dismiss for lack of a speedy trial because Mooney did not assert his right *prior* to trial, thus failing to satisfy the third prong. Given that *Bruce* involved a delay in trial, opposed to sentencing, this issue requires further analysis.

¶15 Mooney specifically argues that his speedy trial right includes the period between November 24, 2003, when he was convicted, and the date he actually received his sentence on March 3, 2005. Although we have not previously addressed whether the right to a speedy trial includes sentencing, the United States Supreme Court stated in *Pollard v. United States* (1957), 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393, 399, that it would "assume *arguendo* that sentence is part of the trial for purposes of the Sixth Amendment." In light of *Pollard*, we now conclusively hold that the right to a speedy trial applies through sentencing. We also hold that when analyzing a speedy trial claim involving the period between trial and sentencing, courts shall still consider the four prongs of the *Barker* test—(1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right to a speedy trial by the defendant; and (4) the prejudice to the defense. Importantly, as to the third prong (assertion of the right), when the issue is sentencing rather than trial, the test is not whether the defendant asserts his or her right before trial, but rather whether the right is asserted before sentencing. We conclude that Mooney satisfied the third prong of the *Barker* test because he asserted his right prior to sentencing. Mooney, however, has *not* satisfied the fourth prong—that is, he has not shown that the delay in sentencing resulted in prejudice.

6

¶16    When analyzing the prejudice element, the Supreme Court identified three defense interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.  The Court determined that "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system" in that witnesses could die or disappear during a delay, or be unable to accurately recall events.  *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.   In this case, Mooney was not incarcerated in the period between trial and sentencing, nor is there any indication that the delay impaired his defense.  Mooney has also not shown that he experienced inordinate anxiety due to the delay.

¶17    Because we conclude that Mooney has not satisfied the prejudice prong of the *Barker* test, we decline to address the first and second prongs.  We hold that the District Court did not err in denying Mooney's motion to dismiss for lack of a speedy trial.

¶18    **2.     Did the State prove that Mooney drove the vehicle that crashed into Ruff's fence and that he drove it upon a public way?**

¶19    Mooney contends that the State failed to prove beyond a reasonable doubt that he was the person "in actual physical control" of the vehicle that crashed into Ruff's fence "upon the ways of this state open to the public," as mandated by § 61-8-401, MCA.  Specifically, Mooney argues that there was no evidence introduced at trial proving that he was the one driving the vehicle in question; nor was there any proof, according to

7

Mooney, that the crashed vehicle was ever driven upon "ways of this state open to the public"—i.e. "any highway, road, alley, lane, parking area, or other public or private place adapted and fitted for public travel that is in common use by the public." Section 61-8-101(1), MCA.

¶20 The State presented testimony that Mooney repeatedly appeared at Ruff's front door on December 14, 2002, communicating that his vehicle had crashed into Ruff's fence. Mooney claimed ownership of the vehicle by referring to it as "his" car. He also apologized for damaging Ruff's fence. Neither Ruff nor Officer Aman observed anyone else in the vicinity any of the times Mooney came to the door. We conclude that based on the circumstantial evidence presented by the State, a rational trier of fact could have found beyond a reasonable doubt that Mooney was the driver of the vehicle.

¶21 As for Mooney's contention that the State failed to prove beyond a reasonable doubt that the car was driven "upon ways of this state open to the public," we conclude that a rational trier of fact could have inferred from Officer Aman's testimony regarding the location of Grelck Lane (on which the Ruff property sits) that it qualifies as a "road . . . lane . . . or other public or private place adapted and fitted for public travel that is in common use by the public." Section 61-8-101(1), MCA.

¶22 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER